IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Justin D. Cohen,

      Plaintiff,

      v.                          Case No. 2:15-cv-431

Gary Mohr, et al.,

      Defendants.


<u>ORDER</u>

Plaintiff Justin D. Cohen, a former state prisoner, filed this civil rights action pursuant to 42 U.S.C. §1983, against Gary C. Mohr, Director of the Ohio Department of Rehabilitation and Correction ("ODRC"); Doctor Andrew Eddy, ODRC Chief Medical Officer; Mick Oppy, former warden of the Correctional Reception Center ("CRC"); Lisa Entler, former Healthcare Administrator for the CRC; Michelle Miller, the warden at Belmont Correctional Institution ("BCI"); Brad Eller, the former Healthcare Administrator at BCI; Drs. Aaron Samuels and Paul Weidman, physicians employed by ODRC who treat inmates at BCI; and Michelle McNally, a nurse at BCI. Plaintiff alleged in his complaint that the defendants did not provide adequate treatment for his Crohn's disease and kidney stones, and delayed in obtaining his medical records from his healthcare providers. Plaintiff alleged that these failures resulted in cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. The defendants filed motions for summary judgment (Docs. 52 and 69). This matter is now before the court for consideration of plaintiff's objections to the July 18, 2016, report and recommendation of the magistrate judge which recommended

that the motions for summary judgment be granted.

If a party objects within the allotted time to a report and recommendation, the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1); see also Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1).

I. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, by showing that the materials cited do not establish the absence or presence of a genuine dispute, or by demonstrating that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) and (B). In considering a motion for summary judgment, this court must draw all reasonable inferences and view all evidence in favor of the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Am. Express Travel Related Servs. Co. v. Kentucky, 641 F.3d 685, 688 (6th Cir. 2011).

2

The moving party has the burden of proving the absence of a genuine dispute and its entitlement to summary judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party's burden of showing the lack of a genuine dispute can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the ultimate burden of proof at trial.  Id.  Once the moving party meets its initial burden, the nonmovant must set forth specific facts showing that there is a genuine dispute for trial.  Id. at 322 n. 3.  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  Niemi v. NHK Spring Co., Ltd., 543 F.3d 294, 298 (6th Cir. 2008).  The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  See Fed. R. Civ. P. 56(c)(3)(noting that the court "need consider only the cited materials").

II. Lack of Medical Treatment Claim

A. Supervisory Liability

The magistrate judge correctly noted that to establish liability under §1983, a plaintiff must plead and prove that a defendant is personally responsible for the unconstitutional actions which injured him.  Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978); Grinter v. Knight, 532 F.3d 567, 575 (6th Cir. 2008).  To assert a constitutional claim against individual government officials, "a plaintiff must plead that each Government-Official defendant, through the official's own individual actions, has violated the Constitution," and cannot rely

on a theory of <u>respondeat</u> <u>superior</u> or vicarious liability. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009). The mere fact that a defendant denied an inmate's grievance is not sufficient to establish liability. <u>Grinter</u>, 532 F.3d at 576. Likewise, §1983 liability cannot be based on mere knowledge or failure to act. <u>Id.</u> To hold a supervisor liable under § 1983, plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct[.]" <u>Everson v. Leis</u>, 556 F.3d 484, 495 (6th Cir. 2009).

The magistrate judge, citing plaintiff's complaint and deposition, concluded that there were no factual allegations indicating that defendants Mohr, Eddy, Miller, Eller, McNally, Oppy and Entler were personally involved in the alleged denial of medical care. Rather, they were named as defendants due to their supervisory roles with OCRC and the institutions where plaintiff was confined, or due to their involvement in the grievance process. This court agrees with the finding of the magistrate judge that plaintiff does not allege facts indicating that these defendants personally took any action in regard to his medical treatment, or authorized, approved, or knowingly acquiesced in unconstitutional conduct by other prison officials.

In his objections, plaintiff summarily alleges that these defendants all had direct involvement with his medical care, and that he was not suing them solely due to their supervisory roles. However, he points to no evidence which would establish that any of these seven defendants had any involvement in the decisions made concerning his medical treatment at the institutions. The court agrees with the conclusion of the magistrate judge that no genuine

4

dispute of fact has been shown to exist in regard to the liability of these defendants, and they are entitled to summary judgment on plaintiff's claim of inadequate medical care based on supervisory liability.

B. Denial of Medical Care

To establish an Eighth Amendment violation based on the failure to provide medical care, a prisoner must show that he has a serious medical condition and that the defendants displayed a deliberate indifference to his health.  Farmer v. Brennan, 511 U.S. 825, 839 (1994); Wilson v. Seiter, 501 U.S. 294, 298 (1991)(inmate must prove both an objective and subjective component: (1) a sufficiently grave deprivation, such as serious medical needs; and (2) a sufficiently culpable state of mind (wantonness)); Estelle v. Gamble, 429 U.S. 97 (1976).  To be liable under the Eighth Amendment, officials must know of and disregard an excessive risk to inmate health or safety, must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion.  Farmer, 511 U.S. at 844.  A complaint that a prison doctor or official has been negligent with respect to medical diagnosis or treatment does not state a valid claim under the Eighth Amendment.  Estelle, 429 U.S. at 106; Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir. 1994).  Further, a prisoner does not state a claim merely by pleading that he disagrees with the diagnosis of prison medical personnel or the treatment provided by the institution.  Estelle, 429 U.S. at 107-08; Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

The magistrate judge summarized plaintiff's verified complaint at length.  Doc. 110, pp. 2-5.  The complaint and record contain

multiple allegations and staff notes concerning plaintiff's treatment history at the institutions, including frequent treatment visits to doctors and nurses, x-rays, blood work on at least four occasions during a six-month period, and adjustments to plaintiff's treatment plan and prescribed medications.  Dr. Weidman stated in his declaration, Doc. 52, Ex. A, that plaintiff was regularly examined, monitored and treated as a patient of the institution's Chronic Care Clinic, and was regularly seen by medical staff as a result of his requests for additional medical appointments. Plaintiff's potassium, Vitamin D and hemoglobin levels were tested, and he was given a diet of six small meals.  Doc. 91-12, p. 1.

Plaintiff's chief complaint concerning the treatment of his Crohn's disease was that he was prescribed Mesalamine rather than Entocort, which he had previously taken.  Dr. Weidman explained in his declaration that Entocort is a cortico-steroid that is not appropriate for long-term maintenance of Crohn's disease, and that the side effects of this drug include early cataract formation, hyperglycemia, adrenal failure, and avascular necrosis.  Dr. Weidman noted a consult report by Dr. Steven C. Dellon, a gastroenterologist, who also informed plaintiff that Entocort is not a maintenance medication.  Although plaintiff complained of nausea and diarrhea while he was on Mesalamine, he also had similar problems while on Entocort, as indicated by the treatment notes of his primary care physician, Dr. Annette Chavez.  Eric Lyle Declaration, Doc. 52, Ex. B, p. 3.

As to plaintiff's kidney stones, Dr. Weidman stated in his declaration that kidney stones generally do not become a problem until they drop into the ureter.  Dr. Weidman indicated that while

6

at the institution, plaintiff had kidney stones in his kidney that were not symptomatic and which did not call for surgery or other aggressive procedures.  Plaintiff complained that he was not given a restricted diet appropriate to his kidney stone condition, specifically complaining that he was given peanut butter snacks. However, defendants cited to plaintiff's deposition testimony that he did not eat the peanut butter snacks, and also presented evidence of plaintiff's commissary purchases, which frequently included foods not compatible with his kidney stone diet.

The magistrate judge correctly concluded that no reasonable jury could conclude that the defendants acted with deliberate indifference in treating plaintiff's medical conditions.  This is a case where plaintiff received regular medical treatment.  He simply disagreed with some of the treatment which was provided. The magistrate judge did not err in stating that a difference of opinion between a prisoner and the prison health care providers does not amount to an Eighth Amendment claim.  Mitchell v. Hininger, 553 F.App'x 602, 605 (6th Cir. 2014)("a desire for additional or different treatment does not suffice by itself to support an Eight Amendment claim"); see also Rhinehart v. Scutt, 509 F.App'x 510, 513 (6th Cir. 2013)(neither negligence alone, nor a disagreement over the wisdom or correctness of a medical judgment is sufficient to allege a deliberate indifference claim); Kirkham v. Wilkinson, 101 F.App'x 628, 630 (6th Cir. 2004)("This court is reluctant to second-guess medical judgments where a prisoner has received some medical attention and the dispute concerns the adequacy of that treatment.").

In his objections, plaintiff argues that his condition in the

7

institution was worsening and that the physicians should have given him Entocort.  He notes records where he complained of weight loss.  However, defendants noted plaintiff's deposition testimony, where he stated that his weight fluctuated by ten to fifteen pounds, and that he had lost ten pounds prior to being incarcerated.  He contests the magistrate judge's observation that even according to plaintiff's complaint, he did not always take the medication prescribed to him or follow the recommended treatment plans.  Plaintiff cites one treatment note stating that he was compliant with taking medications.  However, in his answer to plaintiff's interrogatories (Doc. 66), Dr. Weidman stated that plaintiff did not have a favorable record of compliance with medications, that plaintiff reported that he was not taking his Crohn's medication as prescribed, and that plaintiff's complaints that the medication was not working were "more a statement of compliance rather than efficacy."  Doc. 66-1, Answers 2, 6 and 10.  Dr. Samuels also stated in his answer to plaintiff's interrogatories that plaintiff did not take his prescription for Crohn's and Biaxin as ordered.  Doc. 66-1, Answers 11 and 21.  Even the allegations in plaintiff's complaint state that he refused to take antibiotics which were prescribed for a sinus infection.

Plaintiff also filed unauthenticated medical records with his objections which relate to his treatment for kidney stones with surgery after his release from the institution in 2016.  Plaintiff may not offer, for the first time in an objection, evidence which was never presented to or considered by the magistrate judge.  Murr v. United States, 200 F.3d 895, 902 n. 1 (6th Cir. 2000).  In any event, those records do not establish that plaintiff's kidney

stones would have required surgery during the time he was incarcerated.

The court finds that no genuine dispute has been demonstrated in regard to plaintiff's Eighth Amendment claim based on an alleged lack of proper medical treatment, and that defendants are entitled to summary judgment on that claim. Further, since no constitutional violation occurred, defendants are entitled to qualified immunity on this claim. <u>Miller v. Sanilac County</u>, 606 F.3d 240, 247 (6th Cir. 2010).

## III. Failure to Timely Procure Plaintiff's Medical Records

In determining whether a prison's failure to timely treat a condition adequately violated the Eighth Amendment, "medical proof is necessary to assess whether the delay caused a serious medical injury." <u>Blackmore v. Kalamazoo County</u>, 390 F.3d 890, 898 (6th Cir. 2004); <u>see also</u> <u>Napier v. Madison County, Ky.</u>, 238 F.3d 739, 742 (6th Cir. 2001)(an inmate claiming an Eighth Amendment violation based on the failure to provide timely medical care must place verifying evidence inthe record to establish the detrimental effect of the delay in treatment). The only allegations in plaintiff's complaint concerning the failure to timely procure his prior medical records were addressed at defendants Entler and McNally.

Plaintiff alleges in his verified complaint that he arrived at CRC on March 15, 2014, that he received Azacort on March 17, 2014, and that he was given Mesalamine on March 18, 2014. The record shows that the medical staff promptly treated plaintiff's medical conditions upon his arrival at CRC even before receiving his records. However, plaintiff alleges that defendants would have

treated him differently and more efficaciously and given him Entocort if there had been no delay in receiving his medical history.

The magistrate judge correctly noted that there is no evidence that defendants would have treated plaintiff any differently if they had received his medical records sooner, and that this claim was simply a restatement of plaintiff's disagreement with the medications which were provided. The evidence shows that even after receiving plaintiff's medical records in May, 2014, Dr. Weidman continued to treat plaintiff with Mesalamine rather than Entocort for the reasons he gave in his declaration. The magistrate judge further stated that plaintiff failed to present medical proof that any delay in obtaining his records caused him serious medical injury. In his objections, plaintiff points to no evidence which would establish that the magistrate judge's findings were erroneous. Plaintiff has offered no evidence sufficient to raise a genuine dispute of fact as to whether defendants violated his Eighth Amendment rights due to a delay in obtaining his medical records. The court concludes that defendants are entitled to summary judgment on this claim.

IV. Conclusion

Having reviewed the report and recommendation and plaintiff's objections in accordance with 28 U.S.C. § 636(b)(1) and Rule 72(b), the court finds that plaintiff's objections are without merit. The court overrules plaintiff's objections and adopts the magistrate judge's report and recommendation (Doc. 110). The motions for summary judgment (Docs. 52 and 69) are granted. As defendants did timely appear and defend this action, plaintiff's motion for

default judgment (Doc. 100) and supplemental motion for default judgment (Doc. 101) are denied.  The clerk shall enter judgment in favor of the defendants.


Date: September 27, 2016         _____s/James L. Graham_____
                                 James L. Graham
                                 United States District Judge

11